[No. 3,274.]

# THE PEOPLE OF THE STATE OF CALIFORNIA v. MILES GIBBONS.

PRELIMINARY EXAMINATION OF PERSON ACCUSED OF CRIME.—The Act of 1851, to regulate proceedings before committing magistrates, contains no provision authorizing or permitting an oath to be administered to the person accused. He is not to be examined generally, nor cross-examined at all; only the five questions specified are to be put to him, and his answers thereto must be committed to writing.

IDEM—EVIDENCE OF JUSTICE INADMISSIBLE.—The evidence of the committing magistrate, as to the statement made by the prisoner on his preliminary examination, is not admissible on the trial.

IDEM—ACT NOT APPLICABLE.—The Act of 1866, authorizing accused persons to become witnesses in their own behalf, is not applicable to preliminary examinations before committing magistrates.

· APPEAL from the County Court of Santa Cruz County.

The defendant was convicted, and appealed.
The other facts are stated in the opinion.

*W. M. De Witt* and *J. W. Coffroth,* for Appellant.

*J. L. Love, Attorney General,* and *Julius Lee,* for Respondents.

· By the Court, WALLACE, C. J.:

The prisoner was tried in September, 1871, in the County Court of Santa Cruz County, upon an indictment for grand larceny in stealing an ox of one Peterson, and was convicted. Before the indictment was found he had been arrested and brought before a Justice of the Peace for examination into the charges made against him. He appeared there without counsel, and upon being inquired of by the Justice if he desired counsel, he answered that he did not. The Justice thereupon examined the witnesses for the prosecution and then put this question to the prisoner: "Will you make a statement or be sworn in your own behalf?" The prisoner

answered that he would be sworn; and thereupon he was sworn "to tell the truth, the whole truth, and nothing but the truth, in regard to the charge against him." The prisoner is said to have then testified in substance that he had stolen the ox of Peterson.

On the trial had upon the indictment in the County Court the prosecution called the Justice of the Peace as a witness, and were permitted, against the objection of the prisoner, to prove the substance of his alleged testimony thus given before the Justice.

The Act of 1851 (Hitt. General Laws, Sec. 1742,) especially regulates the proceedings to be had before committing magistrates upon preliminary examinations concerning the commission of public offenses. It contains no provision authorizing or permiting an oath to be administered to the person accused. It provides, it is true, that he may, if he so desire, make a statement in relation to the charge against him, but such statement is not permitted, but is forbidden, to be made under the sanction of a corporal oath. The point of time in the course of the proceedings, at which he may make or decline to make this statement, is fixed by the statute; it must be after the deposition of the witnesses, upon which the warrant was issued, have been read to him, and when the examination of the witnesses on the part of the people, had in the presence of the accused, is closed. He must then be distinctly informed by the magistrate that it is his right to make a statement in relation to the charge against him if he see fit, but that he is at entire liberty to waive making such statement, and that his waiver cannot be used against him on the trial. This requirement is important to be observed as removing possible apprehensions lingering in his mind, calculated to disturb, or, it may be, to overrule his more deliberate judgment, and so impelling him to speak to the charge, though he would otherwise desire to remain silent. If he elect, however, to make a

statement, it is to be taken in writing. The prisoner, in making the statement, is not to be exposed to the danger of willful misrepresentation, inattention, or forgetfulness upon the part of the persons present, who may afterwards appear as witnesses against him, testifying as to what he did or did not say in making his statement concerning the charge. Nor is he to be examined generally, nor cross-examined at all, in making his statement. Five designated questions are to be put to him by the magistrate—these are given in the statute, and none others are permitted. His answer to each question is to be distinctly read to him as it was taken down to each, and it is to be corrected, if he desire it, until it is made to express what it is his purpose to state. Numerous other and like provisions are added, carefully detailing the steps to be pursued in receiving and authenticating the statement made—all of them designed to assure the utmost freedom of the accused from restraint or influence from any quarter in making his statement, and intended to provide against the danger of misapprehension or misunderstanding in any respect. It is easy to discern, in the provisions of the statute, the beneficent spirit of the common law embodied in its great maxim: "*Nemo tenetur seipsum accusare.*"

We are of opinion that, under the provisions of the statute referred to, there was no authority conferred upon the Justice to administer an oath to the prisoner upon his preliminary examination, nor to hear or receive testimony from the mouth of the accused in that proceeding, and that the statements made by the prisoner and detailed by the Justice were improperly admitted.

Nor do we think that the subsequent Act of April 2, 1866 (p. 865), authorizing accused persons to become witnesses in their own behalf, has any applicability to mere preliminary examinations had before committing magistrates. The statute speaks of *trials* of indictments, complaints, and other proceedings, and provides that the credibility of the testi-

mony given by the accused shall be left to the determination of the jury, etc. We find nothing, either in its letter or context, evincing a purpose to interfere in any respect with the statute specially regulating the subject of the preliminary examination of persons charged with the commission of public offenses.

Judgment reversed and cause remanded for a new trial.