# Court of Appeals.

*January*, 1883.

## PEOPLE *v.* McGLOIN.

[Affirming 1 *N. Y. Crim. Rep.* 105.]

Statement of Prisoner, when admissible against him as a
Confession.—Code of Criminal Procedure, §§ 198–200.—
Penal Code, § 714.—Code of Civil Procedure, § 832 (as
amended by L. 1879, ch. 542).—Witness.

Upon the prisoner's arrest, he was told by an inspector of police that
he was accused of shooting Louis Hanier, that he (the officer
making the arrest) was an inspector of police, that he had seen
him try to steal a barrel of whiskey the night before, that he
knew of the prisoner's pawning the pistol, with which the murder
of Hanier was committed. No threats were made, or inducements
held out to the prisoner. The prisoner having then said that he
would make a statement, a coroner was sent for who reduced to writ-
ing the statement made by the prisoner, while under arrest, which was
a confession of the killing of Hanier. *Held,* that such a statement
was not governed by the provisions of sections 198–200 of the Code
of Criminal Procedure, and was admissible in evidence against the
prisoner as a confession.

A statement made under these circumstances is not rendered inadmissible
as evidence by the fact that it was made under oath.

A person convicted and sentenced for crime, is competent as a witness.

The effect of section 832 of the Code of Civil Procedure (as amended by
L. 1879, ch. 542), and of the same provisions in section 714 of the
Penal Code, is to repeal by implication the provisions of the
Revised Statutes (3 *R. S.* [6th ed.] title 7, § 43), relating to the
incompetency of witnesses sentenced upon a conviction for felony.

*Semble,* that while in a capital case, this court may in furtherance of jus-
tice, under Code of Criminal Procedure, § 527, consider objections to
the competency of evidence, though not taken on the trial, yet the ac-
cused has no legal right to the review of such questions in this court.

Appeal by defendant from a judgment of the General Term
of the Supreme Court in the First Department, affirming a con-
viction in the Court of General Sessions for the city and county

of New York, convicting the defendant of murder in the first degree. The facts of the case together with the points of counsel are given in the report of the case at General Term, *ante,* page 105.

*William F. Howe,* for appellant.

*John R. Fellows,* assistant district attorney, for the people, respondent.

RUGER, Ch. J.—We should be quite content to rest our decision of this case upon the opinion delivered at general term, were it not a matter affecting the existence of a human life, and therefore requiring the utmost care on the part of those having charge of the administration of the law, to see that no injustice be done to the accused. These considerations have seemed to require that we should express our views fully on the material questions presented by this record, and state the reasons for the conclusions arrived at. It appears by the record, that the defendant, Michael E. McGloin, was indicted for murder in the first degree, in having caused the death of one Louis Hanier, on the morning of the 30th day of December, 1881. The indictment contained two counts, the first charging that the murder was committed while the said McGloin was engaged, with others, in the commission of the crime of burglary and felony; and the second, that the said crime of murder was committed with a deliberate and premeditated design to effect the death of said Louis Hanier. Upon the trial of this indictment at a court of General Sessions in the city of New York, a statement proved to have been made and signed by the defendant was offered in evidence on behalf of the people, against him. It was objected by the counsel for the defendant, that this statement was inadmissible, for substantially the following reasons:

First. That it was made by the defendant under the influence of fear, produced by threats made to him by the officer in whose custody he then was, upon a charge of committing the crime in question.

Second. Because it was taken before a magistrate after de-

fendant was accused of, and under arrest for, the perpetration of a crime, but was not taken and authenticated in accordance with the requirements of sections 198 and 199 of the Code of Criminal Procedure.

Third.  That it was not voluntarily made, being a sworn deposition.

The first of these objections proceeded upon the assumption that the officer effecting the arrest had threatened the prisoner, and that such threats had produced an emotion of fear in the mind, probably affecting the character of his confession.  If the assumption is well founded, it will be fatal to the admissibility of the evidence, and also to the conviction in part founded thereon.  The facts upon which this ground of objection rests, are as follows:

Upon making the arrest, the officer informed McGloin that he "was charged with shooting Louis Hanier;" that he (the officer) was inspector of police, and "had been watching him" (the prisoner) "since the shooting, and saw him in company with a man named Healey, and saw him try to steal a barrel of whiskey the night before I arrested him.  I also told him about the pledging of the pistol" (referring to the pawning by McGloin, the day after the murder, of a pistol, with which the crime was supposed to have been perpetrated). "McGloin said he would make a statement.  I said to him, I would send for 'Coroner Herman to take it."  The coroner was then sent for, and came to police headquarters, where the defendant was in custody, and the confession in question was made, the coroner not acting in any official capacity, but as a mere clerk to take down and prove the confession.  This was substantially all that occurred between the officer and the defendant previous to the making of the statement.  We fail to see in this conversation the existence of any threats, or any proof from which it could be inferred that the defendant made the statement under the influence of fear.

It was held by this court in this case of People v. Wentz (37 N. Y. 303), where the defendant was in custody upon a charge of arson, that a confession drawn out by questions, and preceded by the statement made by the officer to the prisoner, "that he was in a bad fix, and had got caught at last," was "wholly vol-

untary, and made uninfluenced by any threat, menace, promise, or other influence."

The case of Cox *v.* People (80 *N. Y.* 500), although a capital case, was, in respect to the inducements held out to the prisoner, similar to the Wentz case. A confession there made by the defendant was held admissible. The court further held that it was " not sufficient to exclude a confession by a prisoner that he was under arrest at the time, or that it was made to the officer in whose custody he was, or in answer to questions put by him."

No material circumstance appears in the case at bar, which did not appear in the cases referred to, except that here the officer stated to the prisoner that he was aware of an attempt on the part of the prisoner, the night before his arrest, to steal a barrel of whiskey. It would be unreasonable to say that the defendant was moved to make this confession by fear of his exposure and punishment for the comparatively trivial crime of stealing, when he stood uninfluenced by the fact that he was in custody charged with the commission of a crime for which his life then stood in jeopardy. The argument, in short, is, that defendant might be improperly influenced to confess the commission of the crime of murder, through fear that he might be exposed and prosecuted for the crime of stealing whiskey. There is little, if any, force in it.

The question upon which the second ground of objection was based, prior to the adoption of the Code of Criminal Procedure, was the subject of some controversy and difference in the courts. Hendrickson *v.* People, 10 *N. Y.* 28 ; People *v.* McMahon, 15 *Id.* 385 ; People *v.* Wentz, *supra ;* Teachout *v.* People, 41 *N. Y.* 7. The difficulty, in brief, seemed to be in determining whether the reason for the objection rested upon the theory that the evidence was given in obedience to the requirements of a subpœna, and was therefore compulsory and objectionable, as requiring a prisoner to give evidence which might criminate himself, or whether it was based upon the presumption that a prisoner giving evidence in relation to a crime, with the commission of which he is charged or suspected, gives it under such influences as produce an apprehension of danger and a mental disturbance, rendering it unjust to hold

him responsible for what he says while subjected to such influences. It was said that such evidence is not voluntary, because the mind being confused and agitated by the apprehension of danger, cannot reason with coolness, and will naturally resort to falsehood to escape the consequences of the impending danger. Hendrickson *v.* People, *supra ;* People *v.* McMahon, *supra.*

The effect of these differences was to cause the line which distinguished admissible from objectionable confessions, to fluctuate according to the theory which was followed, and deprived the law of that certainty, and prisoners accused of crime of that uniformity of protection which is so essential to justice. Without discussing or referring to the authorities on this subject at length, it may be said that the following propositions were, prior to the adoption of the Criminal Code, well settled by law in this state :

1st.   That all confessions material to the issue, voluntarily made by a party, whether oral or written and however authenticated, were admissible as evidence against him on a trial for a criminal offense.   People *v.* Wentz, *supra.*

2d.   It was no objection to the admissibility of such confessions that they had been taken under oath from a person attending before a coroner, in obedience to a subpœna, upon an inquiry, conducted pursuant to law, into the causes of a homicide. Hendrickson *v.* People, *supra ;* Teachout *v.* People, *supra.*

3d.   That the confession or declaration sought to be given in evidence, was in writing, and purported to be sworn to, was no objection to its admissibility, unless it also appeared that it was taken before a magistrate upon a judicial investigation against the person accused of the commission of the crime.

PARKER, J., in Hendrickson *v.* People, *supra*, said, in relation to the objection that a confession was not taken conformable to the statute, "But neither is the statute, nor were the common law rules, of which it is declaratory, applicable to any examination except that of a person brought before a magistrate on a charge of crime.   All other examinations are classified as extra-judicial."

The provisions of the Code of Criminal Procedure, regulating the mode of taking and authenticating the statements of prisoners accused of crime, contained in sections 188–200, inclusive, refer in terms only to the judicial examinations therein

provided for, regularly instituted before one of these magistrates described in section 147, for the examinations of criminals. A coroner is not one of these magistrates. There is no direct evidence in the case that the paper offered was sworn to by the defendant. Such fact is sought to be inferred, from the fact that in the body of the paper this clause is inserted : "The above is a true statement in every respect, to which I swear, and I make the same of my own free will." And also because it purports to have been "taken" before the coroner, and is subscribed by him. These facts furnish very uncertain evidence that the defendant was sworn to such statement. The only witness who was called upon to testify on this subject was Officer Byrnes, and he testifies positively that the defendant was not sworn by the coroner. But assuming that this paper was sworn to by McGloin, we must, within the authorities in this state, come to the conclusion that it was in no respect a compulsory statement, and was at common law admissible in evidence as against him on his trial.

The Code of Criminal Procedure for this state went into effect September, 1881, and contained the following provision : "Section 395. A confession of a defendant, whether in the course of judicial proceedings, or to a private person, can be given in evidence against him, unless made under the influence of fear produced by threats, or unless made upon a stipulation of the district attorney that he shall not be prosecuted therefor; but it is not sufficient to warrant his conviction, without additional proof that the crime charged has been committed." The crime in this case was committed after the Code took effect, and is therefore, governed by its provisions. The admissibility of the evidence in controversy, under this statute, there being no proof that the same was made either under the "influence of fear produced by threats," or upon the stipulation referred to in the act, is beyond question. It is thus found that neither at common law, nor by the statute, was this evidence open to any of the grounds of objection raised.

One Frederick Banfield was called as a witness by the people on the trial, and gave material evidence against the defendant. Upon cross-examination, he testified that he had been arrested and convicted of the crime of grand larceny, and that he had been

sent to the state prison for the period of eighteen months.   That he was also convicted of the crime of burglary, and sentenced therefor in a court of general sessions to the penitentiary for the term of three and one-half years.   No objection was taken to this testimony, neither was a motion made to strike it out on the trial.   The question as to the competency of Banfield, as far as can be seen from the record, was first raised at the general term.   If the question had been raised upon the trial, *non constat*, but that the people might have shown a pardon, and thus restored the competency of the witness.   It is quite clear that no error was committed at the trial with respect to this evidence, and we might well decline to disturb the judgment on account of the objection now raised to Banfield's competency.   Its consideration here is permissible only in view of that portion of section 527 of the Code of Criminal Procedure, which reads as follows : "And the appellate court may order a new trial if it be satisfied that the verdict against the prisoner was against the weight of evidence or against law, or that justice requires a new trial, whether any exception shall have been taken or not in the court below."   The plaintiff in error would seem to have no legal right to a review of this question in this court.   Inasmuch as Banfield gave important and material evidence against the defendant, which might, and probably did, influence the finding of the jury ; if for any reason such evidence could be legally excluded on a new trial, it might possibly be claimed that justice in his case required such trial.   It therefore becomes competent for us to examine the validity of the objection now raised to Banfield's competency. It is claimed that Banfield was rendered incompetent to testify as a witness in the case, by virtue of the provisions of section 43, title 7, 3d vol. of the Revised Statutes, Banks' 6th ed., the essential portions of which read as follows :

"No person sentenced upon a conviction for felony shall be competent to testify in any cause, matter or proceeding, civil or criminal, unless he be pardoned by the Governor or by the Legislature, except in the cases specially provided by law."   It is claimed that section 832 of the Code of Civil Procedure, which was in force at the time of the commission of this crime, and which read as follows : "A person who has been convicted of a

crime or misdemeanor is, notwithstanding, a competent witness in a civil or criminal action, or special proceeding, but the conviction may be proved for the purpose of affecting the weight of his testimony, either by the record or by his cross-examination, upon which he must answer any question relevant to that inquiry; and the party cross-examining him is not concluded by his answer to such a question," does not restore the competency of the witness, because the disqualification imposed by the foregoing section of the Revised Statutes, follows only upon a " sentence based upon a conviction for a felony," whereas the subsequent enabling statute embodied in section 832 of the Code of Civil Procedure, relieves only those who have been disqualified by a conviction of a crime or misdemeanor, leaving, as it is claimed, those who have been tried, convicted and sentenced, still subject to the exclusion pronounced by the Revised Statutes. It is hardly conceivable that this construction can be seriously urged. Both at common law and by statute, a witness becomes disqualified, only after sentence rendered upon a conviction for felony. People *v.* Whipple, 9 *Cow.* 707; People *v.* Herrick, 13 *Johns.* 82.

When it is considered that a mere conviction, not followed by a sentence, never worked a disability, it will be seen that the construction contended for by the plaintiff in error would deprive section 832 of the Code of Civil Procedure, as well as section 714 of the Penal Code, of any meaning or effect whatsoever. One of the most familiar rules for the construction of statutes requires not only that some effect should be given to all acts of the Legislature, if capable of such interpretation, but that effect must be given, if possible, to all of the language employed. New York & Brooklyn Bridge, 72 *N. Y.* 527. The language used in section 832 to describe the object intended to be accomplished, is that which has obtained invariable usage, not only in the reports, but with text writers, and is there used according to the signification given to it by legal writers. It was, therefore, an accurate legal description of such a disqualification to say that it is produced by a conviction of a felony. It is the depravity of nature evidenced by the conviction, that creates the disability; and is the only cause of that disability. " It is the infamy of the crime, and not the nature of the punishment which destroys competency." 1 *Wharton's Crim. L.* § 760.

While the terms "disqualified by a sentence for crime" or similar words are never found in the text-books or reports, the language used in section 832 is invariably employed to describe the disability referred to.   Jackson *v.* Osborn 2 *Wend.* 555; 13 *Johns.* 82, *supra ;* Hilts *v.* Colvin, 14 *Johns.* 182.

The disqualification, though entirely based upon the conviction, yet in order to preclude the possibility that the conviction may have been nullified by a motion in arrest or other proceeding, is by the Revised Statutes required to be followed by a sentence in order to become effectual.   There is not one disqualification produced by a conviction, and another by a sentence, but both conviction and sentence together produce one and the same disqualification.   The removal of the cause of disqualification necessarily restores the competency of the witness, without reference to the fact as to whether he was sentenced or not.   It was evidently the intention of the Legislature to remove the disqualification in question, and it is our duty in construing this statute, to give effect to that intention. From the irreconcilable repugnancy which exists between these acts, the inference inevitably follows, that the provisions of the Revised Statutes were intended to be repealed by the enactment of the Code of Civil Procedure.   We are therefore of the opinion that no reason exists for granting a new trial upon this ground.

Notwithstanding the admission of the confession of McGloin in evidence against him, it is still required by section 395 of the Code of Criminal Procedure, in order to warrant his conviction, " that additional proof that the crime charged has been committed," should be given.   Without undertaking to state the evidence in detail, it will be sufficient to refer to the several prominent facts which the evidence outside of the admissions contained in his confession either proved or tended to prove.   The proof showed that, previous to his murder, one Louis Hanier lived in a two-story frame dwelling on West Twenty-sixth street, in the City of New York ; that the lower part of said house was used for a bar-room and restaurant, with a hall adjoining ; that the upper part of said house was occupied as a dwelling by said Hanier and his family, and communicated with the lower part of the house by a stairway running into the hall, and from the hall, by a doorway opening into the bar-

room; there were two modes of entrance into the house: one from the street, by a doorway opening into the bar-room, and another by a door opening into the hall. On the morning of December 30, 1881, about the hour of two o'clock, Louis Hanier, standing on the stairway leading from the upper to the lower stories of said house, and being at the time about three steps from the top of the stairway, was fatally shot by a pistol or revolver in the hands of some person standing in the door-way, between the bar-room and the hall, at the foot of the stairway; that said Hanier died about three minutes after said shooting, in consequence of the wound thereby occasioned. It was in proof that Hanier had closed and locked up his saloon about the hour of one o'clock, and had retired to rest. That he was awakened by his wife, who had heard a noise in the saloon below, and started in his night-shirt to investigate the cause of said noise, when he was shot as described. It was testified by a policeman, that after Hanier had closed up his saloon and retired, he (the policeman) tried the front doors of the house, and found them both securely fastened. It was further shown that there was a back door to the saloon, opening into a back yard, which they were accustomed to fasten at night on closing up the saloon. It was also shown that, immediately after the shooting, the front door of the saloon was found open.

About eleven o'clock of the night of the homicide, the defendant, Michael E. McGloin, redeemed a pistol which he had in pawn with one Gooley, on West Thirteenth street, then supposed to be loaded, and took it away with him; that said McGloin, some time on the morning of December 30, 1881, in company with several other persons, left a package containing a revolver with one Charles R. Graves, who keeps a saloon on West Fifty-seventh street in New York, and asked him to keep the same for him; that on the morning of the said 30th day of December, McGloin again obtained said pistol, and at about eleven o'clock A. M. of that day, pledged it for a small loan with one Bernard Rosenthal, who keeps a pawnbroker shop at No. 362 Ninth avenue, in New York city.

This pistol was found through the admissions contained in McGloin's confession, and was acknowledged by McGloin to be the pistol with which Louis Hanier was shot.

It was further proved, by Frederick Banfield, that he saw McGloin about half past ten o'clock of the morning of said 30th of December, and had the following conversation with him: "I asked him," says Banfield, "if on the night before, he was out. He said, 'Yes.' I told him there was a man killed around Twenty-sixth street; I asked him if he was around Twenty-sixth street the night before; he said, 'Yes.' Then he said to me, 'A man ain't a tough until he knocks his man out.'" This evidence we think not only tended to prove, aside from McGloin's confession, that a burglary was committed upon the dwelling of Louis Hanier on the morning of December 30, 1881, but also tended to establish the fact that Louis Hanier was unlawfully killed in the course of the commission of such burglary, and that the defendant was a principal in the commission of both such crimes. We are therefore of the opinion that there was sufficient corroboration of the confession of the defendant, McGloin, to warrant his conviction of the crime of murder in the first degree. The confession of the defendant also tends to prove, not only his active participation in the commission of the burglary, but the fact that he fired the shot which killed Louis Hanier. If we consider the confession in connection with the other proofs given on the trial, it tends to establish the fact that the crime in question was committed under circumstances of great atrocity, indicating on the part of the perpetrator a wanton and reckless disposition, and a depraved and dangerous character. They together, unquestionably furnished sufficient evidence to justify a jury in finding the defendant guilty of the murder of Louis Hanier under both counts of the indictment.

The conclusions at which we have arrived, as to the competency of the evidence objected to, as well as the legal effect of all the evidence in the case, render it unnecessary to examine at length the several exceptions taken to the charge of the recorder by the counsel for the plaintiff in error. Three exceptions are brought to our attention by the brief of the counsel. The first is an exception to the refusal of the recorder to charge as follows: "That in order to convict under the first count of the indictment, the jury must be satisfied beyond reasonable doubt, 1st. A burglary or larceny was committed by the prisoner;

2d. That while so engaged in the commission of either or both of said offenses, the prisoner killed the deceased. Before the jury can consider the proposition as to the killing whilst in the perpetration of a felony they must find that there was evidence, exclusive of the confession of the prisoner, that the felony had been committed ; that the prisoner's alleged confession is not sufficient to warrant the jury in finding affirmatively that the offense of burglary, or grand larceny, or both of said offenses had been committed, without additional proof on the subject."
If there were any erroneous propositions included in this complex request, the refusal to charge as requested was properly made. It will be seen by the first clause of the request that the Recorder is asked to charge the jury, that they cannot find the defendant guilty of any crime thereunder, unless they also find the existence of the several elements constituting the crime of murder in the first degree. In other words, that no conviction could be had under said count, except for murder in the first degree. In fact it was competent for the jury to convict the prisoner of the crime of manslaughter, or any inferior degree, under that count, and without reference to the truth or existence of several of the facts described in the request. The second clause of such request is based upon the alleged inadmissibility of the confession of McGloin. As we have seen, that assumption was incorrect, and this part of the request was therefore erroneous. The last clause of this request was actually charged by the Recorder, immediately after the refusal to charge, above referred to. The exception to the refusal to charge as requested was therefore not well taken. The exceptions to the refusal of the court to charge the jury as matter of law, upon the evidence, that they could not convict the prisoner of murder in the first degree under the first count of the indictment; and also the exception to the refusal of the court to charge the same with reference to the second count, were neither of them well taken, inasmuch as we have held the evidence to be sufficient to justify the jury in finding the defendant guilty under both counts. Upon the whole case, we are satisfied that the verdict was neither against the weight of evidence nor against law ; that the trial was conducted in substantial conformity with the rules of law, and that the result was such as the jury might properly

reach upon the evidence.    We do not think that justice requires a new trial, but on the contrary, that it leads us to an affirmance of this conviction.

The judgment is therefore affirmed.

All concur except RAPALLO, J., absent.