THE PEOPLE OF THE STATE OF NEW YORK, RESPOND-
ENT, v. FRANK MONDON, APPELLANT.

*Confession of a person accused of crime — what is included in the term as used in section 395 of the Code of Criminal Procedure — when the prisoner's examination before the coroner is admissible — what evidence in addition to a confession is necessary to authorize a conviction.*

The defendant, an Italian laborer, while under arrest upon a charge of murder, was taken by the sheriff before the coroner, and after being sworn was examined as to the relations existing between him and the deceased, and as to his own conduct at or about the time of the homicide. He confessed no fact tending to convict him of the crime, the acts and declarations as to which he testified being material only in so far as they were afterwards proved to be in some respects false. He had no counsel, and the coroner did not advise him that he need not answer any of the questions put to him or submit to an examination.

Upon the trial of the defendant for murder in the first degree the statements made by him upon his examination before the coroner were, against the objection and exception of his counsel, admitted in evidence.

*Held*, that the term "confession," as used in section 395 of the Code of Criminal Procedure, providing that "a confession of a defendant whether in the course

of judicial proceedings or to a private person, can be given in evidence against him, unless made under the influence of fear produced by threats," is not to be restricted to admissions of guilt alone, but is intended to include statements as to his conduct and declarations at and about the time of the commission of the crime.

That the statements were admissible under the said section and that the court did not err in receiving them. (FOLLETT, J., dissenting.)

*People* v. *McGloin* (91 N. Y., 241) followed.

The counsel for the defendant requested the court to charge that if there was not sufficient evidence to satisfy the jury, aside from the admissions of the defendant that he committed the crime charged, they must acquit him. The court refused so to charge, but did charge that the confession was not sufficient without additional proof that the crime had been committed.

*Held*, no error.

APPEAL from a judgment convicting the defendant of murder in the first degree, and from an order denying a motion for a new trial.

The defendant was accused of having killed one John Weishart, whose body was found in a ditch in the vicinity of the defendant's house. Upon the trial, testimony given by the defendant upon his examination under oath before the coroner was, against the objection and exception of his counsel, received in evidence. The counsel for the defendant requested the court to charge the jury that if there is not sufficient evidence to satisfy the jury, aside from the admissions of the defendant that he committed the crime charged, they must acquit him.

The Court — Do you mean by that that they cannot convict unless they are satisfied after throwing out the confession?

The defendant's counsel — Yes, sir.

The Court — I refuse to charge that, but I charge, as I have before, that the confession is not sufficient without additional proof that the crime has been committed. To the refusal to charge and to the qualification made by the court the defendant excepted.

*J. J. Duddleston* and *H. Clay Hall*, for the appellant.

*A. B. Steele*, district attorney, for the respondent.

BOARDMAN, J.:

The defendant was convicted of murder in the first degree in killing John Weishart. At the inquest held to ascertain the cause of his death, the defendant then under arrest charged with the

murder, was brought by the sheriff before the coroner and sworn-While denying his guilt he made statements touching his relations with deceased, and about his own conduct at or about the time of the homicide. These statements were proved upon the trial, under the defendant's objection and exception, but no ground of objection was stated to the court, so far as the papers show. Assuming, however, that the objections and exceptions were sufficient in form, we have to consider whether the defendant's declarations made before the coroner under oath while under arrest on suspicion, but without warrant charged with this crime, were admissible in evidence.

By section 395 of the Code of Criminal Procedure "a confession of a defendant, whether in the course of judicial proceedings or to a private person, can be given in evidence against him, unless made under the influence of fear produced by threats," etc. The remainder of the section has no relation to the question before us. The evidence offered was not a confession but, on the contrary, a denial of his guilt of the crime. The statements made will not, however, be treated I apprehend, by any harsher rule than if they were confessions in the strictest sense of guilt. They were confessions or statements of his conduct and declarations about the time of the murder and where he was and what he knew or saw of the deceased at the same time. I shall hold that such statements are controlled by the section cited and that it will not be restricted by the courts to admissions of guilt alone. The purpose of the law, I submit, is to allow such evidence to be given to a jury, provided it is not made under the influence of fear produced by threats. The jury, from all the circumstances surrounding the case, is left to give to it such weight and credit as seems proper. The section was doubtless intended to make a definite and certain rule where formerly, if the authorities were not conflicting, they were obscure, refined and difficult to follow or distinguish. The commission of a crime is easy and prompt. The punishment of the criminal is often a task of great difficulty, involving a great expense of time and money. It is therefore wise in the legislature to render easy and certain, so far as may safely be done, the rules of evidence to be observed in criminal trials. The competency of such evidence is fully supported, I think, by the case of the People v. McGloin (91 N. Y., 241; S. C., at Genl. Term, 1 Crim. Rep., 105). Judge BRADY, at

General Term, says this section, "in phraseology at least, limits the objection to a confession to the ground simply that it was made under the influence of fear produced by threats." And therefore whatever may have been the rule heretofore, such confessions, with the exception named and possibly one other, may be admitted in evidence against the prisoner. In the Court of Appeals Chief Judge RUGER would have been content to rest the decision of the court upon Judge BRADY's opinion were not a human life involved. He therefore proceeds to discuss the several grounds of objection taken in that case.

*First.* That the confession was made under the influence of fear produced by threats.

*Second.* Because it was taken before a magistrate after the defendant was accused of, and under arrest for, the perpetration of the crime, and

*Third.* That it was not voluntarily made, being a sworn deposition. He finds in the case no evidence of threats, and so dismisses the first ground. A summary statement of the law as well settled prior to the Criminal Code, is his answer to the second objection. He says, page 247:

1st That all confessions material to the issue, voluntarily made by a party, whether oral or written, and however authenticated, were admissible as evidence against him on a trial for a criminal offense. (*People* v. *Wentz,* 37 N. Y., 303.)

2d. It was no objection to the admissibility of such confessions, that they had been taken under oath from a person attending before a coroner, in obedience to a subpœna upon an inquiry conducted pursuant to law into the causes of a homicide. (*Hendrickson* v. *People,* 10 N. Y., 28; *Teachout* v. *People,* 41 id., 7.)

3d. That the confession or declaration sought to be given in evidence was in writing and purported to be sworn to was no objection to its admissibility, unless it also appeared that it was taken before a magistrate upon a judicial investigation against the person accused of the commission of the crime. The learned judge proceeds to show that the examination before a coroner is extra judicial and is not included in the third proposition quoted and is not embraced in sections 188 to 200 of Criminal Code.

In the McGloin case the statement, purporting to be under oath,

was made before the coroner. But if under oath it was decided that under the authorities it was in no respect a compulsory state ment and was at common-law admissible in evidence against the defendant. Then after reciting section 395 of Criminal Code it is further said : " It is thus found that neither at common-law, nor by the statute, was this evidence open to any of the grounds of objection raised."

The McGloin case seems to me to sustain the rulings of the learned justice on the trial. The language of the Criminal Code is broad, distinct and positive. It allows the evidence to be put in on the trial and its weight and value to be adjudged by the jury. Why shall we not accept it as it reads and according to its plain intent ? Why shall we again go back to the vague and nebulous hypotheses of possible influences upon the mind of the prisoner, of his fear and anxiety and confusion arising from his situation ? He is now a competent witness in his own behalf and can explain his declarations and conduct after abundant time for reflection. The acts and declarations of the prisoner, as sworn to by him, tended to exculpate him from the alleged crime and were of no consequence except as they were afterwards in some respects proved to be false. He confessed no fact before the coroner tending to convict him of the crime now charged upon him. Why, then, shall it be presumed that he was acting under the influence of fear, instead of cunning, in the absence of evidence ? Why shall it be presumed in the like absence of evidence that his evidence so given was not voluntarily and willingly given ? True, the coroner should have advised him that he need not answer any of the questions put to him or submit to an examination. But in the absence of such advice the law will not presume his answers were compulsory and against his will. A person accused of crime should have the protecting mantle of the law thrown around him. That is done by giving a prisoner every right of exception while the people have none. It is always safe for a court to rule against the people in criminal cases, for there can be no review or reversal on that account. So that step by step the tendency is to protect the prisoner by all recognized lawful means and also to give him the benefit of every doubtful ruling on the trial. If the present evidence shall be held incompetent on appeal, the trial courts are again thrown back into the slough of

doubt and uncertainty. Presumptions will again be invoked to deprive the jury of the prisoner's declarations, admissions and conduct when the fact was recent and when honest and innocent men are likely to tell the truth. The Criminal Code will be disregarded by holding it incompetent. A rule of evidence adopted by the legislature should not be deprived of all its virtue by judicial construction in hostility to its plain intent.

The request to charge was clearly untenable. The jury was told it could not convict upon the defendant's confession alone. But it is not the law that there must be evidence enough to satisfy of guilt outside of the confessions. The jury has the right to resort to the confessions to aid the other evidence in the case and upon the whole determine as to the guilt. Upon the merits the verdict of the jury is sustained by the evidence in the case. An examination of the other exceptions in the case does not show any error to the prejudice of the defendant, nor do any of such exceptions call for special consideration.

The judgment and order should be affirmed.

HARDIN, P. J. :

Prior to the adoption of the Code of Criminal Procedure, it was held that declarations or confessions of a person were not involuntary because made after his arrest and while in custody. (*Murphy* v. *People*, 63 N. Y., 591; *Willett* v. *People*, 27 Hun, 469.) When section 395 of the Code of Criminal Procedure was adopted, the legislature declared that confessions of a defendant "whether in the course of judicial proceedings or to a private person" can be given in evidence.

Two exceptions were declared to the rule : (1.) If the confessions were made under the influence of fear produced by threats. (2.) If made upon stipulation of the district attorney that the person should not be prosecuted therefor. The case before us does not fall within either of the exceptions. There was nothing in the evidence before the trial court, at the time the declarations of the defendant made before the coroner were received, to indicate that the declarations were "made under the influence of favor produced by threats."

The test as to whether the ruling was correct must be made upon

the evidence as it stood when the declarations were ruled upon and received. (*Murphy* v. *People, supra.*) We look into the evidence in vain for any features of it which carry the case within the exceptions in the section of the Code of Criminal Procedure under consideration. Thus we are brought to say that the general rule prescribed by the section allows the declarations of the defendant to be received in evidence. Furthermore the construction put upon the section by the Court of Appeals in *People* v. *McGloin* (91 N. Y., 245) it seems is in point, and it is our duty to follow and apply that construction in this case. It may be observed that there was not evidence in the case before us that called for a close discrimination upon the question of whether or not the "influence of fear produced by threats as was found in the McGloin case."

*Second.* A subsequent part of the section, from which the quotation has been made, declares that "a confession is not sufficient to warrant his conviction without *additional* proof that the crime charged has been committed." The learned trial judge applied this statutory rule to the case in hand. In reply to a request he said, "I charge as I have before, that the confession is not sufficient *without additional proof* that the crime has been committed." He also charged that there must be corroboration of the confession tending to connect the defendant with the crime. The language of the trial judge quoted, carried to the jury the rule laid down by the statute. (*People* v. *Williams*, 29 Hun, 520.)

*Third.* There was no error in refusing to charge the jury that they "must not consider the evidence of Louise Mondon." The effect, force and credit to be given to that evidence was properly left for the jury to say. (*Chapman Exrs.* v. *Ins. Co.*, MS. opinion, Fourth Dept.) The jury were instructed that "they might disregard her evidence." "It is a question for them whether they would give any weight to it and what weight;" the charge in that regard was sufficiently favorable to the defendant. (*Coleman* v. *People*, 58 N. Y., 555.) The case seems to have been carefully tried, and the questions of fact very fairly and faithfully submitted to the jury.

In *Murphy* v. *People* (4 Hun, 102; S. C., affirmed, 63 N. Y., 590) it was held that "to authorize a conviction in criminal cases upon circumstantial evidence it is not necessary for the prosecution to

prove the case, to the exclusion of every possibility that the crime was committed by a person other than the prisoner; it is sufficient if the evidence satisfy the understanding and conscience of the jury, and exclude from their minds all reasonable doubt of the guilt of the accused." In the case in hand the suggestion that another, or even others may have been concerned in and in complicity with the defendant in the crime is not sufficient to warrant a distrust and disturbance of the verdict of the jury. Concurring with brother BOARDMAN who has said " the verdict of the jury is sustained by the evidence in the case," and believing that there was no error in the progress of the trial, I must vote for affirmance.

FOLLETT, J. (dissenting):

It is difficult to understand and unsafe to construe a statute, without having in mind the law upon the subject existing at the time the statute was passed. Since *Warickshall's case* (1 Leach, 263), the sole test of the admissibility of confessions in countries wherein the common law prevails is, were they voluntary? An analysis of the reported cases would be unprofitable and simply show: (1.) That prior to *Baldry's case* (2 Den. C. C., 430), the courts presumed confessions to have been involuntary and inadmissible from slighter causes than since that case. (2.) That the confusion in the cases has arisen from the courts assuming that the physical facts and inducements which were sufficient to render a prior confession involuntary should control the decision of every subsequent case resting upon like or similar facts, without regard to the character or intelligence of the individual, while, on the other hand, courts have applied the rule (which has remained unchanged since the case first cited), to the facts of each case, recognizing the true rule that whether a particular confession was voluntary, was a question of fact rather than of law. It is apparent that circumstances and surroundings which would unsettle and coerce the judgment of one person rendering his confession involuntary, would produce no such result in the case of another differently constituted and trained.

The following are the leading cases in this State which bear directly upon the question under consideration. In *Hendrickson* v. *The People* (10 N. Y., 13), the defendant was examined under

oath before a coroner in respect to the death of his wife. When examined he was not under arrest or under suspicion. Subsequently, he was convicted of her murder, and it was held competent for the people to prove what he had testified to before the coroner. Four of the judges of the Court of Appeals holding that the evidence was properly received and three dissented. In the *People* v. *McMahon* (15 N. Y., 384), the defendant was arrested without a warrant, upon suspicion of having murdered his wife. He was taken before the coroner, who was holding an inquest, and examined under oath. He was afterwards indicted and tried for the murder. Upon his trial his testimony given before the coroner was read in evidence against him. The Court of Appeals reversed the judgment, holding that the statements were not voluntary. All of the judges conurred in this judgment except two, who did not hear the argument. In the case of *People* v. *Wentz* (37 N. Y., 303), McMahon's case was commented upon and approved; and it was held that the test of admissibility of admissions was whether they were voluntary.

In *Teachout* v. *The People* (41 id., 7), the defendant, who was not under arrest, but was under suspicion of having murdered his wife, was examined before the coroner as to the circumstances of her death. Before he was examined, the coroner informed him that it was rumored that he had caused her death and that he was not obliged to testify. He said he had no objection to telling all he knew. (41 N. Y., 9 and 10.) Subsequently he was convicted of the murder of his wife. Upon the trial his testimony given before the coroner was proved against him by the people. The Court of Appeals held that the statements were voluntary and competent; all of the judges concurring except two

In discussing *Hendrickson* v. *The People* and *McMahon* v. *The People*, it was said: "In the former case (Hendrickson's), the declarations were held admissible; in the latter (McMahon's), they were held incompetent. The precise distinction by which the latter is distinguished is that in the latter case the prisoner stood before the coroner as a party in fact charged with the crime, and was there subjected to examination on oath touching his own guilt or innocence. The coroner was in such case substantially in the place of an examining magistrate; and the fact that the prisoner was held

under an arrest made without warrant, could not make his protection against such an inquisition less imperative."

The general rule applicable to judicial confessions, is well stated by Wharton, and is fully sustained by the cases cited in the note to the section quoted. "But the testimony of an accused party, *taken as such*, is not admissible, when such accused party is put on his oath and sworn and examined. This rule is founded upon the unreliable as well as the inquisitorial character of such statements, and therefore where a man, having been arrested by a constable, without warrant, upon suspicion of having committed murder, was examined as a witness at the coroner's inquest it was held that the statements thus made by him were not admissible against him on his trial for the murder. The same rule obtains where the defendant is compelled to answer under oath questions by the committing magistrate." (Whar. Crim. Ev., § 668; see, also, 1 Green. Ev. [13th ed.], § 225; 1 Ph. Ev. [4th Am. ed.], 560; 3 Russ. Cr. [5th ed.], 475.)

The authorities above cited do not directly bear upon the constitutional question about to be discussed, but they show that the rule applied upon the trial of this case does not prevail in any country governed by the principles of the common law.

Section 395 of the Code of Criminal Procedure provides : "A confession of a defendant, whether in the course of judicial proceedings or to a private person, can be given in evidence against him, unless made under the influence of fear produced by threats, or unless made upon a stipulation of the district attorney, that he shall not be prosecuted therefor; but is not sufficient to warrant his conviction, without additional proof that the crime charged has been committed."

The word " confession " signifies an admission of a guilty participation in the commission of a crime. (*People* v. *Strong*, 30 Cal., 151; *People* v. *Parton* 49 id., 632; Step. Dig. of Ev., art. 21.) This is also the sense in which the word is generally used. Within this meaning of the word, the defendant made no confession. But assuming that the word " confession," as used in the section quoted embraces admissions and statements made in the course of a denial of guilt, still, the question remains, whether the admissions and statements were voluntarily made. Two kinds of confessions are

described in the section, (1) judicial confessions, made in the course of judicial proceedings, (2) extra-judicial confessions, made to private persons. In this case, we are dealing with judicial confessions and admissions, and the decisions and rules relating to extra-judicial confessions will not be specially considered.

The Constitution provides: "No person shall be compelled in any criminal case to be a witness against himself." (Const., art. 1, § 6; Code Crim. Proc., § 10.) The question arises, whether the action of the coroner and of the trial court violated this provision? If the result is prohibited, the fact that it was brought about by the action of two courts, instead of one, while acting in the same matter, does not make the result less illegal.

The Court of Appeals, in discussing the constitutionality of the law permitting defendants in criminal cases to testify in their own behalf, said: "The Constitution primarily refers to compulsion exercised through the process of the courts, or through laws acting directly upon the party, and has no reference to an indirect and argumentative pressure such as is claimed is exerted by the statute of 1869." (*People* v. *Courtney*, 94 N. Y., 493.)

In *People* v. *Hackley* (24 N. Y., 83) it is said: "It is, of course, competent for the legislature to change any doctrine of the common-law, but I think they could not compel a witness to testify on the trial of another person to facts which would prove himself guilty of a crime without indemnifying him against the consequences, because I think, as has been mentioned, that by a legal construction, the Constitution would be found to forbid it." The discussion of this question in the case last cited is full, clear and instructive.

If the Constitution prohibits "compulsion to be exercised through the process of the courts, or through laws acting directly upon the parties," and prohibits the legislature from passing a statute "compelling a witness to testify on the trial *of another person* to facts which would prove himself guilty of a crime without indemnifying him against the consequences," it seems to me that admitting in evidence testimony which a prisoner was required to give in a criminal proceeding against himself, is also prohibited; and the question remains, notwithstanding the section of the Code quoted, was defendant's testimony before the coroner voluntary?

The record in this case discloses that the defendant was an Italian laborer, having an imperfect understanding of the English language. He was under arrest charged with murder. A coroner's inquest was being held. The prisoner was taken by the sheriff, in whose custody he was, and whose power he could not resist, before the coroner's inquest then engaged in an investigation against himself. He did not go there voluntarily. He was sworn by the coroner as a witness, and presumably in the usual form, to tell the truth, the whole truth and nothing but the truth, in the matter under investigation. The prisoner was without counsel, and without means to employ counsel. He was not informed that he could not be compelled to be a witness against himself, nor that he need not give an answer which would tend to criminate himself. He was then questioned by the district attorney and also by the coroner. " The examination was taken by questions put either by the district attorney or myself. He was twice examined, and at the conclusion was resworn." The prisoner had recently come from a jurisdiction where persons charged with crime are compelled to answer questions touching their own guilt or innocence, when put by magistrates. The prisoner's attendance before the coroner was certainly compulsory, and it seems to me the testimony taken was involuntary, and inadmissible under the Constitution.

If admissions obtained by the method under consideration are admissible, it is difficult to see why all persons charged with crime, in prison and ignorant of their rights, may not be taken by sheriffs, before committing magistrates or grand juries, and their answers used against them on trials. Whether admissions are voluntary or involuntary, depends upon the circumstances surrounding each case. Had this defendant been informed of his rights, had he been attended by counsel, or had it appeared as a fact or by fair inference that he knew his rights, his testimony before the coroner might be regarded as voluntary; but not so under the circumstances disclosed by this case. But it is answered there were no threats nor fear, and therefore the examination was legal, and the testimony so taken competent against him on the trial of the indictment. This does not seem to reach the question. When a constitutional statute is so administered by the court as to produce a result prohibited by the Constitution it is error.

Suppose an examination pending before a magistrate or a grand jury : The person charged with the offense under investigation, is in jail, from which he is taken by the sheriff and carried before the magistrate or grand jury. The prisoner is ignorant of his rights and is not informed of them. He is directed in the kindest manner by the magistrate or foreman to be sworn as a witness ; he submits and is cross-examined by the district attorney and the presiding magistrate. His testimony is not given, " under the influence of fear produced by threats," because there are no threats. Under the rule declared by my brethren, evidence so acquired would be admissible upon the trial of the indictment, which seems to me would be a plain violation of the constitutional guaranty. I am unable to see any difference in principle between the supposed case and the case at bar.

A coroner's inquest is a tribunal created by our statutes, charged with the duty of investigating crimes ; and this inquest was engaged in an investigation aimed at this defendant. *The People* v. *McGloin* (91 N. Y., 241), relied upon by my brethren, does not seem to me to be at all in point. In that case the rule was recognized that confessions must be voluntary to be admissible. McGloin was in confinement, and said he would make a statement. A coroner was sent for, who wrote down the prisoner's statement, which upon the trial of an indictment for the crime, was admitted in evidence against him. As said by the Court of Appeals : " The coroner was not acting in any official capacity, but as a mere clerk to take down and prove the confession." The coroner informed the prisoner that it was his right to refuse to make a statement ; that he should consider well before he made one, and no questions were put by the coroner. (*People* v. *McGloin*, 28 Hun, 152.) In McGloin's case the coroner was not acting in a judicial capacity, but as a scribe ; while in the case at bar, the coroner was acting in a judicial capacity, and in effect, *required* the defendant to be sworn, and submit to an examination by the prosecuting officer.

In *People* v. *Gibbons* (43 Cal., 557) it was held that the testimony of a prisoner taken before a committing magistrate, could not be received in evidence upon the trial of an indictment. The decision is placed upon the ground that the magistrate had no authority to take the examination, and it was not admitted as a confession.

Afterwards accused persons were authorized to testify before committing magistrates; and it was then held, that if a prisoner voluntarily testified, the evidence might be admitted upon a trial of the indictment. (*People* v. *Kelley*, 47 Cal., 125.)

Again, section 778 of the Code of Criminal Procedure requires the testimony taken at inquests to be reduced to writing and forthwith filed. The defendant's testimony was not proved by putting in the coroner's record, but by asking if the defendant swore to particular facts.

In *People* v. *Gelabert* (39 Cal., 663) it was held that an extrajudicial confession, partly in English, and partly in broken Spanish, made to a person who did not understand all the prisoner said in Spanish, could not be proved against the prisoner. How perfectly the coroner understood the defendant in this case, may be inferred from his evidence. The coroner testified: "Some of the questions were put directly to the witness, some were not; those which were not put directly were put by an interpreter; we used the interpreter after the first few lines; when we came to a question which we thought he did not understand, we put that through an interpreter; I think that was kept up all through the examination; we finally adopted the interpreter; I came to the conclusion that he did not understand English well enough to be examined; I wrote down the substance of the answers as they were given to me by the interpreter after the questions had been put; when it was read over to him it was read right along from beginning to end through the interpreter; the interpreter was a son-in-law of the deceased; the interpreter was examined as a witness also; no, I am mistaken in the time; on the taking of the evidence which is signed by him no interpreter was used, the interpreter was used on a subsequent day; I read the evidence over to him line by line and asked him if he understood it and if it was the truth which he told me, and he said it was; then I reswore him to the deposition."

Permitting the testimony of the defendant given before the coroner to be proved against him was error, for which the judgment should be reversed, and a new trial granted.

Conviction and judgment of the Oyer and Terminer of Herkimer county affirmed, and proceedings remitted to that court, with directions to proceed.